UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT PRUNTY,                    :        **CIVIL NO. 3:11-CV-0825**
                                  :
            Plaintiff             :        (Judge Nealon)
                                  :
        v.                        :        (Magistrate Judge Smyser)
                                  :
MICHAEL J. ASTRUE,                :
Commissioner of                   :
Social Security,                  :
                                  :
            Defendant             :


### REPORT AND RECOMMENDATION


The plaintiff, Robert I. Prunty, has brought this civil

action under the authority of 42 U.S.C. § 405(g) to obtain

judicial review of the decision of the Commissioner of Social

Security denying his claim for Social Security disability

insurance benefits.


On February 23, 2009, Prunty applied for disability

insurance benefits and supplemental security income benefits.

He claimed that he became disabled on September 21, 2006.  His

severe impairments are degenerative disc disease of the

cervical and lumbar spine, a right knee ligament tear,
bilateral carpal tunnel syndrome, hypertension and obesity.

The claim was denied initially and on reconsideration.
Prunty filed a request for a hearing, and a hearing was held
before an administrative law judge (ALJ) on July 26, 2010.
(Tr. 47-58).  On August 25, 2010, the ALJ issued his decision
denying Prunty's application.  (Tr. 51-58).  The Appeals
Council denied his request for review (Tr. 1-3), making the
ALJ's decision the final decision of the Commissioner.

Prunty filed his complaint with this court on April 29,
2011.  The Commissioner filed an answer to the complaint and a
copy of the administrative record on July 5, 2011.  Pursuant to
Local Rules 83.40.4 and 83.40.5, Prunty filed his brief on
August 12, 2011 and the Commissioner filed his brief on
September 14, 2011.  No reply brief has been filed.

At the July 26, 2010 hearing, Prunty and a vocational
witness testified. (Tr. 59-102).

2

**The Plaintiff's Testimony**.

Prunty testified that he is 46 years old and is a high school graduate who went to a diesel mechanic school. He is not presently working. He is unable to work because of pain that he considers to be unbearable. He has pain, swelling and stiffness from his neck down.

He last tried to work, in 2007, at the Farm Show building for an inauguration event. He could not complete the days allotted for the job due to swelling and stiffness.

His right knee is a source of constant pain, burning and swelling. He takes Vicodin and morphine medications. He has cut back on his medications.

Dr. DeLuca advised him not to lift more than 50 pounds. Prunty thinks that he cannot lift up to 50 pounds. He can carry a bag of groceries. He helps his mother by carrying groceries, and he does household chores. She also helps him because of his physical limitations.

3

Prunty does not have a car and he does not drive.

He has rods and pins in his neck.  He has a compressed spine.  He had a fusion surgery and he wore a neck brace and an electrical monitor.  He also had carpal tunnel surgery on both hands.

In October of 2007 he had a knee tear.  He has had physical therapy for his neck and back.  He has had epidural injections for his knee and for his neck.

He was injured while working at UPS, loading and unloading trucks.  He now lifts nothing that weighs more than twenty to twenty-five pounds.  He vacuums his small apartment. He performs exercises prescribed by the physical therapist.

He can sit comfortably for up to an hour and a half.

**The Vocational Witness' Testimony**.

The vocational witness, Andrew Caparelli, testified that Prunty's significant past work experience was as a

4

courthouse and nightclub security guard and that it was light semi-skilled work.  Prunty had also performed unskilled medium exertional level work as a packer, and he had done unskilled light work at a McDonald's restaurant.  He had briefly performed semi-skilled heavy work as a postal package handler. He had washed dishes in a hospital.

Caparelli was instructed by the ALJ to consider a hypothetical person, 46 years old, with a high school education, who can lift and carry 20 pounds occasionally and ten pounds frequently, who can stand and walk for two hours in an eight hour day, who can sit for six hours in an eight hour day, who can alternate sitting and standing at will, who can climb stairs occasionally, and who should not be made to kneel, to reach overhead or to lift overhead.  Caparelli testified that the hypothetical person could perform work as an information clerk in the travel industry, could work as a parking lot cashier or could work as a toll collector.  He testified that if the hypothetical person cannot stay on task due to pain or due to an inability to concentrate or due to falling asleep, the person could not perform a job.

5

After Caparelli had said that, the ALJ questioned Prunty about has proclivity to fall asleep.  Prunty stated that he falls asleep several times a day.  He falls asleep when he gets in to a car.  He described a recent incident when that occurred.

**The Medical Evidence**.

The medical records show that Prunty has been receiving treatment for more than five years for his right knee ligaments problem and for his cervical spine degenerative discs problem. His impairments and medical problems are well documented, and are determined by the ALJ to be of such a nature as to reasonably cause the subjective symptoms that the plaintiff alleges.  Whether or not the impairments are as intense, as persistent and as functionally limiting as the plaintiff reports was seen by the ALJ to be the core issue.  In other words, the ALJ saw the credibility of the plaintiff to be the principal issue.

The medical records (Tr. 366-664) document that, from September 8, 2006 to the present, the plaintiff has been

frequently and consistently seeking and receiving treatment for
chronic neck pain, restriction of spinal movement, knee pain,
blackouts, carpal tunnel syndrome, and prior to that for his
knee problems.

He has been diagnosed with multi-level disc herniation
and chronic cervical strain.  He has had disc fusion surgery,
knee surgery and carpal tunnel surgery.

There are medical records from Orthopedic Institute of
PA, Community General Osteopathic Hospital, Harrisburg
Hospital, Susquehanna Valley Pain Management, Pinnacle Health
Physical Therapy, Arlington Orthopedic, Hamilton Health Center,
and other health care providers.

**Law Applicable to Judicial Review**.

If the Commissioner's decision is supported by
substantial evidence, the court should affirm it. 42 U.S.C.
§ 405(g).  Substantial evidence means "such relevant evidence
as a reasonable mind might accept as adequate to support a
conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.

1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.
1995).  Substantial evidence is more than a mere scintilla of
evidence but less than a preponderance.  *Brown v. Bowen*, 845
F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence
if the Commissioner ignores countervailing evidence or fails to
resolve a conflict created by the evidence.  *Mason v. Shalala*,
994 F.2d 1058, 1064 (3d Cir. 1993).  But, in an adequately
developed factual record, substantial evidence may be
"something less than the weight of the evidence, and the
possibility of drawing two inconsistent conclusions from the
evidence does not prevent [the decision] from being supported
by substantial evidence."  *Consolo v. Federal Maritime Comm'n*,
383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision
under the substantial evidence standard, the Commissioner's
decision must be accompanied by "a clear and satisfactory
explication of the basis on which it rests."  *Cotter v. Harris*,
642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence

8

must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707.  In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant

9

work.  If the claimant satisfies this burden, then the
Commissioner must show that jobs exist in the national economy
that a person with the claimant's abilities, age, education,
and work experience can perform.  *Mason v. Shalala*, 994 F.2d
1058, 1064 (3d Cir. 1993).

**Subjective Symptoms**.

20 C.F.R. § 416.929 states the Social Security
Administration's standard for evaluating symptoms.  The section
makes it clear that if the claimant's symptoms, along with his
objective signs and findings, are equivalent to those of a
listed impairment, the claimant is considered to be disabled.
The section also makes it clear that the claimant's statements
about his symptoms will be evaluated by the Commissioner in
combination with the other evidence.

**Discussion**.

In this case the ALJ determined that Prunty has not
engaged in substantial gainful activity since the alleged onset
date, that he has impairments that are severe, that his
impairments in combination do not meet or equal any listed

impairments, and that he is able to perform his past relevant work as a security guard.  The ALJ further determined that the plaintiff has the residual functional capacity[1] to perform other light work jobs as well as his past security guard work.

On the basis of these findings, the ALJ found him not to be disabled.

Prunty argues that the decision of the Commissioner is not supported by substantial evidence.  Specifically, he argues that it was an erroneous finding that he does not have a combination of impairments that medically equals the criteria of the Listings.  20 C.F.R. §§ 404.1525 et seq.  He also argues that it was an error to find that he can perform light work, because he is unable to stay on task and to concentrate.

---

1.  "Residual Functional Capacity" is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett v. Commissioner of Social Security Adm.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

**Equivalence to a Listed Impairment**.

Prunty first argues that the ALJ did not have substantial evidence to find that his multi-level degenerative disc disease, torn right knee ligament and obesity, in combination, do not amount to a level of impairment that meets or is the equivalent of a Listing 1.04 cervical spine impairment.

Listing 1.04 requires a disorder of the spine resulting in the compressing of a nerve root.[2]  There must be evidence of

---

2.  **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

(continued...)

12

nerve root compression.  Prunty asserts that he has significant pain and limited motion in his cervical spine which, he implies, is equivalent to nerve root compression.  The ALJ found that he does not have consistent motor loss accompanied by sensory or reflex loss in the upper extremities.  But Prunty cites to many instances where he complained during medical appointments to the doctor of numbness and tingling in both hands, weakness in the upper extremities and reduced grip strength in the fingers.

The Commissioner argues that the ALJ decision that Prunty's cervical spine condition, in combination with obesity and knee pain, does not meet or equal the impairment description in Listing 1.04 is supported by substantial evidence because even if Prunty's cervical and lumbar spine

---

2.  (...continued)
or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

See 20 CFR Part 404, Subpart P, Appendix 1.

disorders resulted in compromise of a nerve root or of the
spinal cord, the other criteria under Listing 1.04 are not
shown to be present.

The Listing 1.04 material finding is a finding of
degenerative disc disease resulting in a compromise of a nerve
root or of the spinal cord.  1.04(A), which the parties agree
is the applicable subsection, sets forth that the evidence of
the nerve root compression must be in the form of evidence of
neuro-anatomic distribution of pain, limitation of motion of
the spine and motor loss.  The Commissioner argues that
Prunty's reports to his doctors of such symptoms are
appropriately discounted or rejected because the reporting of
symptoms by the patient to the doctor is subjective.  The
Commissioner also argues that Prunty's reporting of the
symptoms was not consistent.

The ALJ refused to consider the subjective symptoms in
the context of a Listings equivalency determination is
erroneous because the Listing 1.04 definition includes an
element involving subjective symptoms and because, elsewhere in

14

his Decision, the ALJ finds that the impairments evidenced by the plaintiff's objective signs and findings could reasonably cause the symptoms alleged by the plaintiff.

The ALJ found inconsistency in the Prunty's levels of impaired sensation in his extremities.  He found that Prunty does not have consistent motor loss accompanied by sensory or reflex loss in the upper extremities.  On that basis, he found no Listing 1.04 impairment or its equivalent.

The ALJ also found no equivalent of a Listing 1.02[3]

---

3.  **1.02 Major dysfunction of a joint(s) (due to any cause)**: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

(continued...)

impairment.  He found that Prunty can ambulate effectively despite his knee ligament tear.

Prunty observes that there is a strong body of evidence that he continues to have difficulty in ambulating effectively. He attributes his difficulty to a combination of the back impairment, knee impairment and his obesity.

The ALJ found that Prunty "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (Tr. 54).  But the ALJ did not present a discussion of a consideration of Prunty's back, knee and obesity impairments in combination so as to address the question whether Prunty's impairments in combination are the equivalent (in terms of disabling effect) of a Listing 1.04 impairment, of a Listing 1.02 impairment or of a Listing 1.04 in combination with a Listing 1.02 impairment.  The ALJ in our view has not satisfied the burden under *Cotter v. Harris,*

---

3.  (...continued)
*See* CFR Part 404, Subpart P, Appendix 1.

*supra,* to explain the finding that he made that Prunty's impairments in combination do not meet or equal a listed impairment.

**Adequacy of the Consideration of Subjective Symptoms**.

In the ALJ's ensuing analysis of the step four and five issues, the ALJ finds that the Prunty's medically determinable impairments could reasonably be expected to cause his symptoms. (Tr. 55). The ALJ also states that the analysis would go forward with an evaluation of the intensity, persistence and limiting effects of Prunty's symptoms. (Tr. 55). The ALJ does then discuss Prunty's reporting of constant pain, and he notes Prunty's decreased strength in December of 2009. But, the ALJ states, "at numerous other times, strength was normal." (Tr. 55). However, he cites no support for this statement. His immediately following reference to evaluators' assessments of Prunty's capacity to lift 10 to 20 pounds seems to be intended to support the preceding statement that Prunty's strength was normal. But an ability to lift 10 to 20 pounds is not equivalent to a normal strength level.

The ALJ, although he discusses Prunty's reporting of constant pain and loss of strength, does not discuss all of the particular symptoms described by Prunty.  The ALJ states that Prunty's symptoms are reasonably related to his medically determinable impairments, but he does not individually identify and discuss the symptoms.  The ALJ then states that Prunty's statements about his symptoms are not credible.[4]  He states that his finding of a lack of credibility of Prunty's unidentified statements is a limited finding, and that Prunty is found not to be credible only to the extent that, if credible, Prunty would be considered to be disabled.[5]  But the

---

4.  The ALJ states: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity  assessment."  (Tr. 55).

5.  In our view, this rationale for rejecting a claimant's credibility, which we have observed in our experience to be used verbatim in many ALJ decisions, constitutes an avoidance of consideration and analysis of the credibility issues that are presented in a particular case.  This rationale simply removes a credibility judgment in a formulaic manner without addressing the issue whether a particular claimant's subjective symptoms are credible and, if so, prevent substantial gainful activity.  A credibility assessment must be made and the court in deciding whether a decision is supported by substantial evidence cannot overlook the ALJ's credibility findings and explanations of them.

ALJ does not explain this finding.  He does not explain how it
is a credibility finding.  It is not upon examination a
credibility finding.  It does not address the matter of the
credibility of statements made by Prunty.

     The ALJ's decision states essentially that because
there are physical residual functional capacity reports in the
record stating that Prunty can stand for at least two hours and
can sit for at least six hours in an eight hour day, Prunty is
not credible to the extent that he states that he cannot
perform substantial gainful activity.  But the ALJ has not
stated why Prunty is deemed not to be credible or why the
residual functional capacity assessments override Prunty's
testimonial assertions of disabling pain and vocational
limitations caused by the pain as well as by the effects of
medications.

     Prunty's testimony about falling asleep during the day
was disregarded by the ALJ.  He did not mention that testimony
or that problem in his Decision.  It may not have been credible
for some reason or another.  But the Decision does not address

it.  Vocational Witness Caparelli stated that if a person falls asleep frequently, and if that cannot be remedied, that person could not perform substantial gainful activity.  Accordingly, the decision of the ALJ is not supported by substantial evidence if the hypothetical person that according to Caparelli cannot work (Tr. 100-101) has materially the same vocational-medical profile as Prunty.

**Recommendation**.

      For the foregoing reasons, it is recommended that the case be remanded to the Commissioner for further consideration of whether Prunty's impairments in combination meet or equal a Listings impairment.  The ALJ, should, if it is found that the Prunty's impairments in combination do not equal a Listings impairment, provide an explanation of that finding.  The Commissioner should be directed also to further consider the credibility of Prunty's statements and to provide an explanation for findings that certain statements were not credible.  Along with a consideration of the credibility of statements of other statements of Prunty about his symptoms, the ALJ should consider the credibility of Prunty's testimony

that he falls asleep frequently throughout the day.  If the ALJ

finds Prunty not to be credible as to particular material

testimonial assertions, the ALJ should provide an explanation

of that finding.


                                    */s/ J. Andrew Smyser*
                                    J. Andrew Smyser
                                    Magistrate Judge

Dated: September 30, 2011.